TEXAS & PACIFIC RAILWAY COMPANY v. D. C. & WILLIS DRISKELL.

Decided April 28, May 26, 1910.

**1.—Railway—Penalty—Discrimination—Tender to Connecting Line.**

The whole of a city to which a railway runs constitutes a "point" on its line and on that of another road connecting with it in such city, within the meaning of article 4574, subd. 2, Revised Statutes, and it is not liable for the penalty denounced by article 4575 for. failing to deliver a car at such point to a connecting line, if the terminal point is within such city. If it has undertaken delivery at a place in such city other than its own station, and which can only be reached over the tracks of a connecting road, it may be liable in damages for non-delivery to the consignee at such place, and under obligation to make arrangements with the connecting line for the switching service necessary to effect such delivery, but the statutory penalty is inapplicable.

**2.—Railroad—Commission—Rates—Connecting Lines—Switching Service.**

Orders of the Railroad Commission fixing a rate from eastern points to points on and east of the line of the H. & T. C. Railroad governed a shipment to Oak Cliff, a place in Dallas, but west of the line of such road, the city in all its parts constituting the point to which the rate was fixed. The transportation was completed on arrival at the carrier's ·station in Dallas, the terminal point, except such as fell under the regulations governing switching cars to a particular place for delivery, which switching· was not compulsory by law on a connecting line but subject to arrangement between the companies.

**3.—Same.**

An order of the Railroad Commission directing plants and industries situated at Oak Cliff, on the line of the G., C. & S. F. Railway, to be regarded as within the switching limits of that road for the city of Dallas, recognized those industries as situated within the city and taking the transportation rates fixed from eastern points to Dallas, by the Commission. That road, in carrying to Oak Cliff the cars brought from the east to Dallas by another, was not completing the transportation to a point west of the H. & T. C. Railroad, under the rates governing such shipment, but performing switching service.

**4.—Carrier—Delivery—Switching Service.**

The T. & P. Railroad, undertaking to transport a car of lumber from a point east of Dallas to Oak Cliff, a place in Dallas, was bound to deliver at Oak Cliff, not merely at its Dallas station; and if, having no track to Oak Cliff, but a connecting road in the city having a track and station there, it failed to arrange with its connection to have the car switched to Oak Cliff, whereby it was never delivered to the consignee, who refused to receive it elsewhere, the company was liable to him for the value of the property, though not for the penalties denounced for a failure to deliver the car to a connecting line. It was not a failure to deliver to its connections for transportation to. destination, but of failure to make such delivery to the consignee after reaching destination as had been promised.

ON MOTION FOR REHEARING.

**5.—Same—Compensation—Discrimination.**

A contract by a railway to deliver to consignee at Oak Cliff, which was in the city of Dallas, only the prescribed rate to Dallas being named, was

not an undertaking to make such delivery at that rate; this would be a discrimination in the shipper's favor. An undertaking of the shipper or consignee to pay the extra expense of making such delivery was implied, the carrier assuming the burden of making skitching arrangements by which it could be done, but not of paying therefore.

Appeal from the District Court of Harrison County. Tried below before Hon. W. C. Buford.

*F. H. Prendergast* and *W. L. Hall,* for appellant.

*Jones & Bibb,* for appellees.—The failure on the part of the initial carreir to transport freight to its connecting carrrier and turn it over as a through shipment, to be transported by the connecting carrier to its destination, is a violation of the statutes and of the rules of the Railroad Commission, and constitutes unjust discrimination and makes the carrier liable for a penalty therefor. Revised Statutes, art. 4574, sec. 2, art. 4475; San Antonio & A. P. Ry. Co. v. Stribling, 99 Texas, 319; Gulf, C. & S. F. Ry. v. Lone Star Salt Co., 63 S. W., 1025; Texas & N. O. Ry. Co. v. Sabine Tram. Co., 121 S. W., 256; 5 American & English Encyclopaedia of Law, 2nd ed., 212; 6 Cyc., 468, sec. b.

WILLSON, CHIEF JUSTICE.—Prior to 1903, Oak Cliff and the City of Dallas, respectively, were stations on the Gulf, C. & S. F. Railway Company's line of railroad, and each of itself, was an independent municipal corporation. During that year Oak Cliff ceased to exist as an independent corporation, and, as the ninth ward thereof, became a part of the City of Dallas. The territory which constituted Oak Cliff continued, however, to be known, and is yet, commonly known by that name; and to distinguish it from the territory before that time, constituting the City of Dallas, will hereinafter be so designated. The principal portion of the City of Dallas is located east of the Trinity River. Oak Cliff is located west of said river. The space of about one mile between them is river bottom land, subject to overflow, and therefore, is unoccupied. After Oak Cliff became a part of the City of Dallas the Gulf, C. & S. F. Railway Company did not maintain there (in Oak Cliff) either a freight or passenger depot, but did maintain there a siding, which it treated as a "flag" or "prepaid" station, and where it continued to deliver freight. The distance between this flag station and said company's depot, in another part of said City of Dallas, was nearly four miles.

The City of Dallas is also a station on the Texas & P. Railway Company's line of railway. Said railway company's line does not extend to Oak Cliff, but it connects with said Gulf, C. & S. F. Railway Company's line of railroad to Oak Cliff.

The Owens Lumber Company was in business at Oak Cliff, where its yard was located, about two miles from the court-house in Dallas, and about three blocks north of the Gulf, C. & S. F. Railway Company's flag station in Oak Cliff. At and during about 18 years before the times hereinafter mentioned, the lumber company had been receiving shipments of lumber at said station.

June 12, 1907, appellant received of appellees, at Woodlawn, a carload of lumber "to be transported," the bill of lading covering same recited, "to Oak Cliff, Texas, and there delivered at the usual and customary place of discharge of transfer of car, in like order and condition to G. W. Owens Lumber Company." The car of lumber, it seems, was duly transported by appellant to its station in Dallas, where it was tendered on a "switch card" to the Gulf, C. & S. F. Railway Company for transportation over its line of railway to the Owens Lumber Company, at Oak Cliff. Said Gulf, C. & S. F. Railway Company refused, when same was so tendered, to receive and so transport the car. The lumber was never delivered to the consignee, the lumber company, but it seems, finally was sold by appellant and the proceeds of the sale retained by it to cover charges claimed against the shipment. Afterwards, appellee commenced suit against appellant, and sought to recover the value of the car of lumber, and a statutory penalty for an alleged failure on the part of appellant, to deliver same to the Gulf, C. & S. F. Railway Company at its (appellant's) connecting line in Dallas, for transportation to Oak Cliff. A trial before a jury resulted in a verdict and judgment in appellee's favor for the sum of $637.22 as the value of the lumber, and for the further sum of $300 as a penalty.

*After Stating the Case as above*—Appellant insists, and we agree, that on the case as made by the record it was not liable to the penalty adjudged against it.

The recovery for the penalty was on the ground that appellant had failed, after transporting the lumber to Dallas, to deliver same to the Gulf, C. & S. F. Railway Company, as its connecting line, for transportation to Oak Cliff.

Subdivision 2 of art. 4574, Chapter 13, Sayles' Statutes, declares that "every railroad which shall, under such regulations as may be prescribed by the commission, fail or refuse to transport and deliver without delay or discrimination, any passengers, tonnage or cars, loaded or empty, destined to any point on or over the line of any connecting line of railroad, shall be deemed guilty of unjust discrimination." Orders of the Railroad Commission, effective January 27, 1896, and March 24, 1897 (circulars 199 and 399), declared that a railroad company, "having received from a shipper a loaded car destined to a point on a connecting line, the company so receiving such loaded car shall forward and haul same over its line to its junction with the next connecting line, to which it shall, at such junction, deliver same for further transportation." Art. 4575, Chapter 13, Sayles' Statutes, declares, that "in case any railroad subject to this chapter shall do, cause to be done, or permit to be done any matter, act or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter or thing herein required to be done by it, such railroad shall be liable to the person or persons, firm or corporation injured thereby, for the damages sustained in consequence of such violation; and in case such railroad company shall be guilty of extortion or discrimination as by this chapter defined, then, in addition to such damages, such railroad shall pay to the person, firm or corporation injured thereby, a

penalty of not less than $125 nor more than $500, to be recovered in any court of competent jurisdiction in any county into or through which such railroad may run; provided that such road may plead and prove as a defense to the action for said penalty, that such overcharge was unintentionally and innocently made through a mistake of fact."

Whether appellant was liable to the penalty adjudged against it or not, depended upon whether it had violated the statute and orders of the Railroad Commission to which we have just referred. And whether it had violated such statute and orders or not depended, first, upon whether the car of lumber was destined to a "point" on one of its "connecting lines;" and, second, upon whether, if the car of lumber was destined to such a point, it had transported and delivered same to such connecting line for further transportation.

The trial court was of the opinion, and so instructed the jury, that for the purposes of the shipment Oak Cliff was a station of the Gulf, C. & S. F. Railway, and "was not a part of Dallas or Dallas Station."

Was Oak Cliff, within the meaning of the statute and said orders of the Railroad Commission, a "point" distinct from Dallas on the line of the Gulf, C. & S. F. Railway, or was it only as a part of Dallas, a "point" on said line of railway? It is clear that the City of Dallas was such a point. The City of Dallas included Oak Cliff. Within the meaning of said statute and orders, could there be a point within a point? We think not. The contention seems to have been that the Railroad Commission had made a certain rate on shipments of lumber to Oak Cliff, and a different rate on such shipments to other parts of Dallas, and thereby, as to such shipments, had segregated the Oak Cliff territory from Dallas. The order of the commission referred to as accomplishing this, became effective March 5, 1906 (circular 2417). Section 2 of the order declared that "rates between points on and east of a line drawn from Red River via the Chicago, Rock Island and Gulf Railroad to Bridgeport, and from Bridgeport, by a straight line to Mineral Wells, thence to Cisco, thence to Brownwood, thence to Llano, thence to San Antonio and from San Antonio via San Antonio and Aransas Pass Railway to Corpus Christi, shall not exceed 18¾ cents per 100 pounds, except to points on the San Antonio & Aransas Pass Railway south of Beeville to Corpus Christi, inclusive, the rate shall not exceed 20 cents per 100 pounds;" and section 3 of said order declared that "rates between points in that portion of Texas on and east of the Missouri, Kansas & Texas Railway of Texas, from Red River via Denison to Sherman and via the Houston & Texas Central Railroad from Sherman to Dallas, and also on and north of the Texas & Pacific Railway from Dallas to Wascom, inclusive, shall not exceed 17 cents per 100 pounds."

It will be noted that section 3 of the order of the commission just referred to, made the 17 cents rate it fixed applicable to points *on* as well as east of the Houston & T. C. Railway, and to points *on* as well as north of the Texas & P. Railway. Dallas was a "point" *on* the line of each of said railways, and the 17 cents rate, therefore, clearly applied to it. As a part of Dallas, Oak Cliff necessarily, also was *on* said lines of railway, and as clearly, therefore, we think, the 17 cents rate applied to it. It would be as reasonable to hold that said rate

did not apply to shipments consigned to warehouses or industries in other parts of the City of Dallas, west of the Houston & T. C. Railway and south of the T. & P. Railway, as it would be to hold that it did not apply to Oak Cliff. And certainly it was not the intention, if it was within the power of the commission to make the rate on shipments of lumber 17 cents if consigned to one part of Dallas, and 18¾ cents if consigned to another part thereof. Therefore, we are of the opinion that the effect of the order of the commission was to make the rate on lumber from points north and east of the lines of railway specified in said section 3 to Dallas—all parts of Dallas, including Oak Cliff—17 cents per 100 pounds. In considering this feature of the case, we have not regarded as important the order of the Railroad Commission effective March 16, 1906 (circular No. 2423), declaring "that the plants or places of business of all commercial industries located on the line of railway of the Gulf, Colorado & Santa Fe Railway Company, or on spur tracks connecting within said line, and situated in that part of the City of Dallas, formerly known as Oak Cliff, and also of those industries located on said line of railway intermediate between Dallas station and said Oak Cliff, shall, with respect to rates or freight charges on shipments between said industries and points on all railway lines in Texas, be considered within the switching limits of the Dallas station of said Gulf, Colorado & Santa Fe Railway." That order, we think, should be regarded merely as declaratory of the applicability to the plants and industries specified, as a part of Dallas, of the rate fixed for Dallas by the order of March 5, 1906. To construe it as a recognition by the commission as a fact, that the rate to the plants and industries specified in it by force of said order of March 5, 1906, was 18¾ cents, and, as changing the rate thereto to 17 cents, would be to hold that the commission intended, and thereby was attempting to discriminate in favor of the specified plants and industries in Oak Cliff, against other commercial industries in Oak Cliff. It is not reasonable to conclude that the commission so intended, and before saying it was attempting by its order, to accomplish such a discrimination in favor of one industry against another one in Oak Cliff, we think its order should be incapable of a construction avoiding such a result. As above suggested, we think the order of March 16, 1906, fairly is capable of being construed as merely declaratory of the meaning of the order of March 5, 1906, in so far as the plants and industries specified were concerned.

The fact that the tracks of appellant's line of railway connected with the tracks of the Gulf, C. & S. F. Railway Company's line of railway in Dallas, and that the latter's line of railway extended to, while the former's line of railway did not extend to Oak Cliff, did not, as to freight destined to Dallas, which appellant had contracted to deliver in Oak Cliff, make the Gulf, C. & S. F. Railway a "connecting line" as to such freight. "Connecting lines" of railway, as defined by the Railroad Commission (circulars 199 and 399, before referred to), "are two or more lines connecting with each other by crossing each other's tracks or otherwise, and forming a continuous rail route between the initial and terminal points of shipment; and a connection, or connecting line is any one of said two or more lines." If, as we have con-

cluded is true, Dallas and Oak Cliff were one and the same "point" within the meaning of the statute and the Railroad Commission's orders, when the shipment in question reached appellant's freight depot in Dallas, it was at its "terminal point," and therefore, appellant was not bound to deliver it to the Gulf, C. & S. F. Railway Company, and the latter was not bound, as a connecting line, to receive it from appellant, for transportation to the consignee in Oak Cliff. Appellant's duty and responsibility with reference to the shipment thereafterwards, was not different from the duty and responsibility it would have borne to same, if, instead of contracting to deliver it in Oak Cliff, it had contracted to deliver it at a specified warehouse, or other place, in the City of Dallas. It might be liable for such damages as it occasioned the consignee or shipper by a failure to so deliver the shipment, but it would not be liable to the penalty denounced by the statute for a failure to transport and deliver to a connecting line. In view of the conclusion reached, that Oak Cliff was not a "point" distinct from Dallas, on the Gulf, C. & S. F. Railway, it is not necessary that we should consider the other question suggested. The assignments, attacking as erroneous that part of the judgment decreeing a penalty in favor of appellee against appellant, are sustained.

But we think there was no error in the judgment in so far as it was in appellee's favor for the value of the lumber, less the sum appellant was entitled to demand and receive for transporting same to Dallas. Appellant's undertaking not only was to transport the lumber to Dallas, but also to deliver it to the consignee in a specified part of Dallas, to wit, Oak Cliff. A tender of the lumber to the consignee at its station in Dallas, was not a compliance with that part of its undertaking which required it to deliver same to the consignee in Oak Cliff. Therefore, when it failed to make such delivery it breached its contract, and when it sold the lumber for charges claimed to be due thereon, it was guilty of a conversion thereof, and became liable to appellee for its value.

The judgment will be so reformed as to adjudge a recovery in favor of appellee against appellant for the sum of $637.22—(the value of the lumber, less the cost of transporting same to Dallas)—interest thereon, at the rate of six percent per annum, from October 29, 1909—(the date of the judgment of the court below)—and costs accruing in said court. As so reformed, the judgment will be affirmed. The costs of the appeal will be adjudged against appellee.

### ON MOTION FOR A REHEARING BY APPELLANT.

Appellant has misconstrued the holding of this court, in concluding that the effect thereof was to determine that it had, for the lawful rate to Dallas, bound itself by its contract with appellees to transport and deliver the lumber to a specified point in Oak Cliff. The contract did not so stipulate and we did not so construe it. We agree that such an undertaking on the part of appellant would have been unlawful, because it would have operated as a discrimination in favor of appellees against shippers, whose consignments of lumber to Dallas had to be transferred at their own or their consignee's expense, from appel-

lant's depot to other points in Dallas, and because prohibited by orders of the Railroad Commission (circulars 199 and 399). The contract, we think, should be construed as an undertaking by appellant for charges authorized by law to transport and deliver the lumber at the point specified in Oak Cliff, and as an undertaking by appellees to pay such charges. It appeared from orders of the Railroad Commission, effective July 12, 1905, and April 18, 1906 (circulars 1791 and 1314), that railroad companies, for a compensation fixed by the orders, were authorized to accept and transport consignments of freight between points in the same city or town. These orders, it seems to us, made it lawful, even if otherwise it would not have been so, for appellant to have arranged with the Gulf, C. & S. F. Railway Company to make delivery for it in Oak Cliff, of lumber it might contract to deliver there, charging the expense of making such delivery to the shipper or consignee. If it might have made such an arrangement and did not, choosing instead, to take the chance of a refusal by the Gulf, C. & S. F. Railway Company to so transport and deliver the shipment, such refusal, we think, is not a reason why its contract with appellees to transport and deliver the lumber in Oak Cliff, should be declared to be unlawful. It was not unlawful for appellant to contract to do that it lawfully could do, either by itself, or with the aid of others.

The motion for a rehearing, therefore, is overruled.

### ON MOTION FOR A REHEARING BY APPELLEES.

Appellees complain that language used in the opinion conveys "the idea that the station and agent were removed from Oak Cliff at the time Oak Cliff became a part of the municipality of Dallas," whereas, they say, the "real facts" are "that the station and agent were abandoned long prior to the time that Oak Cliff became a part of the political corporation of the City of Dallas, and that no change was made after Oak Cliff did become a part of Dallas, and that the flag station or prepay station was separately maintained thereafter until the carload of lumber in question reached Dallas." The record shows the facts to have been substantially as appellees state them, to wit: that in 1891 or 1892 the Gulf, C. & S. F. Railway Company, using the language of witnesses, "established a depot at Oak Cliff," and "abolished it soon thereafter;" that Oak Cliff afterwards, but at a time not shown, was "made a prepay station," and continued to be such a station until December 31, 1907; and that during the time it was a prepay station, a station building was not maintained there, and that the facilities for handling freight there "consisted of a switch track" only.

Appellees contend that they were entitled to a judgment against appellant for the sum of $637.22 and interest, at the rate of six percent from October 29, 1909, and complain that this court, in reforming the judgment of the court below and rendering a judgment here, rendered same for a less sum. The judgment rendered by this court was, and is, for the sum of $637.22 and interest thereon, at the rate of six percent per annum from October 29, 1909. The complaint made by appellees that it is otherwise, evidently is due to an oversight, for neither the language of the opinion of this court nor that of the judgment

rendered in accordance with it, furnishes ground for the complaint made.

The conclusion reached by us that appellees were not entitled to recover the penalty sued for, we still think, is the proper one to be drawn from the facts shown by the record.

The motion for a rehearing is overruled.

*Reformed and rendered*

Writ of error refused.